```
1                   UNITED STATES OF AMERICA
2          EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
3                 909 FIRST AVENUE, SUITE 400
4               SEATTLE, WASHINGTON  98104-1061
5
6
7    CHANDLER D. CARTER,                    )
8                                           )
9                   Complainant,            )
10                                          )
11   v.                                     )
12                                          )
13   NORMAN Y. MINETA,                      )
14   Secretary of Transportation,          )
15                                          )
16                   Respondent Agency.     )
17   _____)
18
19   EEOC Case No. 380 A1 8153X
20   Agency No. DOT-6-00-6121
21
22
23
24                      BENCH DECISION
25
26                     Anchorage, Alaska
27                     August 21, 2003
28
29
30
31   BEFORE:   HON. ZULEMA HINOJOS-FALL, Administrative Law Judge
32
33
34   APPEARANCES:
35
36   For the Complainant:         HUGH W. FLEISCHER, ESQ.
37                                310 K Street, Suite 200
38                                Anchorage, Alaska  99501
39                                (907) 264-6635
40
41   For the Agency:              CHERYL M. JONES
42                                Federal Aviation Administration
43                                227 West 7th Avenue, Box 14
44                                Anchorage, Alaska  99513
45                                (907) 271-5269
```

Exhibit __Q___

1            P R O C E E D I N G S

2        (On record at 12:09 p.m.)

3        THE COURT:  We're on the record on the matter of Chandler

4    Carter v. Norman Mineta, DOT/FAA, and perhaps I should just

5    spell it out, it's Secretary of Transportation is the respondent

6    Agency.  Thank you parties, I'm ready to issue my bench

7    decision.  It is now 1:00 p.m. Pacific Standard Time, on

8    Thursday, August 21, 2003, and I will be issuing a bench

9    decision in the complaint of Chandler Carter, EEOC Case Number

10   380 A1 8153X, Agency number is DOT-6-00-6121.

11                            I.

12                       INTRODUCTION

13       On November 9, 1999, revised regulations governing the

14   EEOC's federal sector complaint process went into effect.  These

15   regulations, found at 64 Fed. Reg. 37,644 (1999), apply to all

16   federal sector EEO complaints pending at any stage in the

17   administrative process.  Pursuant to §1614.109 of the

18   Commission's regulations, I held a hearing on August 6, 2003 at

19   the FAA office of the Regional Counsel, Alaska Region in

20   Anchorage, Alaska.  The hearing was a week long.  It -- actually

21   we took testimony on August 5th, the afternoon of August 5,

22   2003, and took testimony throughout the week, breaking on

23   Friday, August 8th, and commencing again on August 11th, Monday

24   and terminating the hearing on that day.

25       It was on the discrimination complaint filed by the

1  Complainant, Chandler Carter, against Norman Mineta, Secretary,

2  U. S. Dept of Transportation, Federal Aviation Administration.

3  The Complainant Chandler Carter is currently employed by the FAA

4  as an Aviation Safety Inspector,  FG-1825-14, in the Alaskan

5  Region.

6       The Complainant alleges that the Agency discriminated

7  against him on the basis of sex, that is gender, male, and age,

8  date of birth January 13, '35, when, on August 4, 2000, the

9  Complainant was informed by Kent Adams, the Assistant Division

10 Manager, that he was not selected for the position of

11 Supervisory Aviation Safety Inspector, FV-1825-K, and a less

12 qualified, younger female was selected.

13      A total of 17 witnesses, including the Complainant,

14 testified at the hearing. The sixteen witnesses, besides Mr.

15 Carter, the Complainant, approved to testify at the hearing

16 included, number one, Sandy Bergin, retired, formerly a

17 Personnel Management Specialist, Human Resources Division,

18 Alaska Region; number two, Ernestine Fleece, AAL-10, Manager,

19 Human Resources management; number three, Gerald C. "Jerry"

20 Paterson, Alaskan Region Flight Standards; number four, Robert

21 C. Christensen, AAL-230, Technical Standards Branch; number

22 five, Bob Wedemeier, former Senior management Consultant with

23 the FSD in the Alaska Region during the time relevant to this

24 complaint and currently an AFS-7, in Washington D.C.; number

25 six, Thomas Westall, retired, Alaskan Region Flight Standard

1    Division Manager; number seven, Roberta W. Gossweiler, Senior
2    Personnel Management Specialist, Personnel Consultant Services,
3    AAL-14 Alaskan Region; number either, Naomi C. Christensen, AAL-
4    21- Resource Management Branch; number nine, Mary Hausermann,
5    Management and Program Analyst, FSD, Alaska Region; number 10,
6    David Lucher; number 11, Rick Girard, past acting Assistant
7    Office Manager, Anchorage FSDO; number 12, Johnnie Wallace,
8    Assistant Manager, Anchorage FSDO; number 13, Kent Adams,
9    Retired, formerly the Assistant Flight Standards Division
10   Manager; number 14, John Duncan, Manager, FSD, Alaska Region;
11   15, Michael Sean O'Neal, the EEO counselor in this matter and
12   16, Gerald Martelli, past Airworthiness section manager,
13   Anchorage FSDO, currently assigned to the America West
14   Certificate Management Office.  With the exception of Mr.
15   Martelli, whose testimony was taken via live video feed, all the
16   witnesses testified in person.

17       During the pre-hearing conference, the Complainant
18   withdrew Mr. O'Neal's name from his proposed list of witnesses.
19   The Complainant's motion, on the last day of the hearing, to
20   call Mr. O'Neal as an impeachment witness was granted and Mr.
21   O'Neal was examined by the parties in person.  In addition,
22   during the pre-hearing conference, the Complainant's withdrawal
23   from his proposed witness list of Dave McGlothlen, Paul K.
24   Willis and Sandra Ward, was accepted.  Finally, during the pre-
25   hearing conference, the Parties' reached a stipulation on the

1  testimony of John Elgee, to the effect that he did not make the
2  request that management change the vacancy announcement at issue
3  in this case.  With the exceptions noted herein, all of the
4  Complainant's proposed witnesses were approved to testify at the
5  hearing. I have reviewed the court reporter's list of Exhibits
6  outside of the record, proposed and admitted, have found them to
7  be correct and will be incorporated on the record of appeal.
8  The Report of Investigation will also be made part of the record
9  of appeal.

10      Based on my review of the entire evidentiary record,
11  including the evidence taken into the record during the Agency's
12  investigation, that composed -- comprises the record of
13  investigation, the evidence offered and admitted into the record
14  during the hearing and for the reasons set forth in this
15  decision I find that the Agency did not discriminate against the
16  Complainant on the basis of either sex or age.

17                              II.

18                       PROCEDURAL OVERVIEW

19      The Complainant sought EEO counseling on August 24, 2000.
20  He signed the Notice of Final Interview and the Right to File a
21  Discrimination complaint on September 25, 2000.  The Complainant
22  filed a formal EEO complaint on September 25, 2000.

23      The complaint was accepted for investigation on November
24  16, 2000, and was investigated between January and March, 2001.
25  The Agency issued the Report of Investigation on March 23, 2001,

1  and a timely Notice of Right to a Hearing was issued.  On April

2  16, 2001 the Complainant requested a hearing, and the complaint

3  and the ROI were received by the Equal Employment Opportunity

4  Commission  on April 25, 2001.

5      Subsequently we held several status and discovery

6  conferences.  The case was rescheduled on a number of occasions.

7  There was a mediation that was undertaken and we finally set the

8  hearing to commence on August 5, 2003.

9                            III.

10                           ISSUES

11     The issue presented in this case is whether the Agency

12  engaged in unlawful discrimination against the Complainant on

13  the bases of gender, that is sex, male, and age when on August

14  4, 2000, the Complainant was informed by Kent Adams, Assistant

15  Division Manager, that he was not selected for the position of

16  Supervisory Aviation Safety Inspector.

17                            IV.

18             APPLICABLE LEGAL STANDARDS

19     In any administrative or judicial proceeding involving a

20  claim of discrimination under Title VII of the Civil Rights Act

21  of 1964, as amended, it is the burden of the Complainant to

22  establish by a preponderance of the evidence, that is, on a more

23  likely than basis, that there is intentional discrimination.  A

24  Complainant may meet his burden of proof by direct evidence or

25  by circumstantial evidence.  As set forth in  McDonnell Douglas

1    <u>Corp. v. Green</u>, 411 U.S. 792 (1973).  And I am going to omit the

2    reading of the internal citations.  I will transmit a copy of

3    the bench decision by e-mail and or fax to all the parties, but

4    particularly to the court reporter so that she can incorporate

5    the internal citations into the record.  To prove intentional

6    discrimination using circumstantial evidence a Complainant must

7    satisfy certain requirements.  To begin, the Complainant must

8    prove a *prima facia* case of discrimination.  This means that the

9    Complainant must present a body of credible evidence from which,

10   were it not rebutted, the trier of fact could conclude that

11   unlawful discrimination did occur.  <u>Furnco Construction Corp. v.

12   Waters</u>, 438 U. S. 567, 577 (1978).  The elements necessary to

13   establish a *prima facie* case under <u>McDonnell Douglas v. Green</u>

14   will vary depending on the specific claims alleged and should

15   not be mechanistically or rigidly applied.

16       If the Complainant establishes a prima facie case of

17   discrimination, a presumption is created that the employer

18   unlawfully discriminated against the employee.  <u>Texas Dept. of

19   Community Affairs v. Burdine</u>, 450 U.S. 248 (1981).  Once the

20   presumption has been created that the Agency has unlawfully

21   discriminated against Complainant, the Agency is given an

22   opportunity to rebut the presumption by coming forward and

23   articulating legitimate, nondiscriminatory reasons for the

24   employment decision.

25       If the Agency comes forward and identifies legitimate,

1   nondiscriminatory reasons for its decision, the Complainant may

2   still prove that unlawful discrimination occurred by offering

3   evidence that the reasons proffered by the Agency were a mere

4   pretext and not the true reasons for the employment decision,

5   and that the Agency engaged in intentional discrimination.  St.

6   Mary's Honor Center v. Hicks , 509 U.S. 502 (1993).  The

7   Complainant must produce specific, substantial evidence of

8   pretext.  St. Mary's Honor Center v. Hicks , 509 U.S. 502

9   (1993).

10                              V.

11                    DISCUSSION AND ANALYSIS

12       A.   The Complainant's *prima facie* case of discrimination.

13            The Complainant, Chandler Carter, has been an Aviation

14   Safety Inspector for over twenty-two years, and Regional

15   Operations Specialist for over seven years.  The initial vacancy

16   announcement for the position at issue in the instant case, that

17   of Supervisory Aviation Safety Inspector, was issued on May 9,

18   2000.  However, the vacancy announcement was amended the

19   following week, changing the Qualifications section by removing

20   the requirement that prospective applicants have one year of

21   specialized experience at the next lower grade (to wit: FG-14)

22   in the normal line of progression.  The Complainant applied for

23   the vacancy on May 30, 2000.  On August 4, 2000, the Complainant

24   was informed by Kent Adams, the Assistant Division Manager, that

25   he had not been selected.  The selectee, Verene Miller, is a

1  female, although one of the top three candidates referred by the

2  selection panel to the selecting official, she had received a

3  lower score from the selection panel than the Complainant, and

4  was six years younger than the Complainant at the time of the

5  selection.

6      The Complainant has alleged that August 4, 2000, the

7  Agency did not select him for the position of Supervisory

8  Aviation Safety Inspector because of his gender, sex, male, and

9  age, date of birth 1/13/35.  To prove a *prima facie* case of

10  discrimination based on age and/or sex in the absence of direct

11  evidence, and in this case the Complainant did not produce

12  direct evidence of discrimination on either of the bases

13  alleged, the Complainant must establish that he is a member of a

14  protected group or groups recognized under Title VII; that he

15  applied for the available positions at issue and was qualified

16  for those positions; that he was not selected for the position;

17  and that an applicant not of the Complainant's protected group

18  was selected for the vacant positions.  McDonnell Douglas v.

19  Green; Texas Dept. of Community Affairs v. Burdine; O'Connor v.

20  Consolidated Coin Caterers Corporation, 517 U.S. 308 (1996).

21  The facts necessary to establish a *prima facie* case of

22  discrimination under the McDonnell Douglas analysis will vary

23  depending on the specific claims alleged.  Furnco Construction

24  Corp., *supra*, 438 U.S. at 577.  I do find that the Complainant

25  for purposes of this bench decision and in having held a hearing

1  in fact established a *prima* facia case of discrimination on both

2  the basis of gender and age.

3      I will now enter -- provide the -- my analysis of the

4  evidence at the hearing.  First of all let me start with the

5  background presented regarding the complaint and this hearing.

6  During the relevant period the Complainant was an Aviation

7  Safety Inspector in the Alaska Region.  On May 9, 2000, a

8  Vacancy Announcement was issued for the position of Supervisory

9  Aviation Safety Inspector, FV-1825-K, in Anchorage, Alaska,

10 listing May 10, 2000, as the open date, and June 7, 2000, as the

11 close date for bidding for the position.  The announcement

12 stated in the Qualifications section that the position required

13 one year of experience at the next lower grade in the normal

14 line of progression.  This section was amended about --

15 approximately a week later, via another Vacancy Announcement, to

16 require one full year of specialized experience equivalent to at

17 least FG-14 or Pay Band J.  The Complainant submitted his

18 application package on May 30, 2000.  On August 4, 2000, he was

19 informed by Kent Adams that he had not been selected for the

20 position.  On August 13, 2000, Verene Miller, a female, date of

21 birth 1941, was promoted to the position at issue in the instant

22 case.

23      The Complainant first alleges that the qualification

24 requirements in the vacancy announcement for the position at

25 issue were altered to allow the selectee, Ms. Miller, who at the

1    time worked at the FG-13 level, to bid for the position.

2    Secondly, the Complainant alleges that the Agency's selection of

3    Robert Christensen as the subject matter expert tasked with

4    determining whether Ms. Miller's experience and qualifications

5    outside of the FAA, while working in private industry were

6    sufficiently comparable to credit her with FG-14 level

7    experience equitable to make her eligible to apply for the

8    position at issue was either flawed, improper, in so far as it

9    was designed to be outcome determinative, or both.

10   Specifically, the Complainant asserts that Ms. Miller's private

11   industry work at the Lane Aviation Corporation was not

12   equivalent to FG-14 or Pay Band J level work, contrary to her

13   assertion in her application and the findings of the subject

14   matter expert, Robert Christiansen.  Third, the Complainant

15   alleges and so testified, that John Duncan, the Division

16   Manager, made a statement during a meeting with Johnnie Wallace,

17   the Selecting Official, that John Duncan wanted Ms. Miller

18   promoted as soon as possible.

19       With respect to his claim of age based discrimination, the

20   Complainant alleges that on a number of occasions his

21   eligibility for retirement has been the subject of conversation,

22   including a comment from Mr. Wallace that the Complainant was

23   too old for this kind of stuff and should retire.

24                               VI.

25   THE COMPLAINANT HAS FAILED TO MEET HIS BURDEN OF ESTABLISHING,

1     BY A PREPONDERANCE OF THE EVIDENCE, THAT THE AGENCY

2     DISCRIMINATED AGAINST HIM AND THE AGENCY HAS ARTICULATED

3     LEGITIMATE NONDISCRIMINATORY REASONS FOR NOT SELECTING THE

4     COMPLAINANT FOR THE POSITION AT ISSUE, WHICH THE COMPLAINANT HAS

5                    NOT SHOWN TO BE PRE-TEXTUAL

6        A.   The Sex Discrimination Allegation:

7        First let me address the sex discrimination allegation.  I

8     have carefully reviewed this testimony and Exhibits with regards

9     to every step of the selection process and find that the Agency

10    did not act improperly at any stage during the selection process

11    so as to give rise to an inference of discriminatory intent

12    based on the Complainant's gender, being male, in the selection

13    of Ms. Miller, rather than Mr. Carter, the Complainant, for the

14    position of Supervisory Aviation Inspector.  And I will

15    succinctly review the evidence upon which I base my conclusion.

16       With respect to the Complainant's allegations that the

17    Agency acted improperly in changing or modifying the threshold

18    requirements in the vacancy announcement so as to provide the

19    selectee, Ms. Miller, with the opportunity to apply for the

20    subject position I find that all the credible evidence, indeed

21    the uncontroverted evidence presented at the hearing, supported

22    the Agency's articulated reason for the change and established

23    the reason to be legitimate.  Specifically the record

24    establishes that the FAA Personnel Management, chapter one,

25    Staffing, Promotion Qualifications, effective April 1, 1996,

1    amended -- or excluded all time in grade requirements other than

2    qualification requirements for promotion of FAA employees and

3    abolished them.   The cited reference is found at tab F-27 of the

4    Record of Investigation and was testified to by several

5    witnesses at the hearing, including Sandy Bergin, the Personnel

6    Management Specialist at the time of the complaint of events

7    were generally referred to as personnel reform.   The Complainant

8    produced no evidence, nor could he, given the uncontroverted

9    evidence, that the time in grade requirements were in effect at

10   the time of the events at issue in this case. I find that the

11   Agency did not act improperly when it amended the vacancy

12   position at issue and reissued it under vacancy announcement

13   number AAL-FS-00-92-5033M, to substitute the qualification in

14   the original, which required time and grade tenure, for the

15   qualification requirement that, quote, candidates must show one

16   full year of specialized experience equivalent to at least FG-14

17   or Pay Band J, unquote. Based on the testimony presented at the

18   hearing, and the document already referred to at tab F-27, the

19   amendment was consistent with the applicable FAA regulations at

20   the time.   The amended vacancy announcement was introduced and

21   admitted at the hearing as Exhibit A-20.

22        Nor is the somewhat confused and contradictory testimony

23   of the witnesses as to who first raised the issue of the

24   original vacancy announcement requiring amendment to conform

25   with applicable FAA regulations, or the circumstances under

1    which the issue was raised, sufficient to raise an inference of

2    discrimination.  Sandy Bergin at the time -- testified that she

3    was the Personnel Management Specialist for the vacancy

4    announcement and that the position requirements were changed

5    because the FAA had eliminated time in grade requirements.

6    According to Ms. Bergin, and a number of other witnesses, the

7    original vacancy announcement number AAL-FS-00-92-5033

8    incorrectly set forth the qualification requirements.  Her

9    testimony was supported by Mary Hausermann, Management and

10   Program Analyst, who stated that the qualifications statement on

11   the first announcement was questioned by the union

12   representative, John Elgee.  However, the parties have

13   stipulated, as I previously noted, that Mr. Elgee had stated

14   that he did not request a change in the required qualifications

15   for the vacancy announcement.  Some witnesses testified that

16   they believed the issue had been raised during the regular

17   Monday staff meetings, but could not identify the speaker either

18   because the speaker had raised the issue telephonically or

19   because their memories were vague.  However, the testimony was

20   consistent in two important and determinative aspects.  Number

21   one, personnel reform was relatively new to the FAA at the time

22   of the complained of events, the time in grade requirements for

23   promotion of FAA employees having been abolished effective April

24   1, 1996, and human resources specialists in the Alaska Flight

25   Standards office having had little experience with the

1    applicable reform requirements; and two, the Management and

2    Program analyst, Mary Hausermann, testified that she had used

3    the KSAO's from previous bid and announcements in drafting the

4    original vacancy announcement at issue in this case.

5    Thereafter, I can draw no -- therefore, I can draw no adverse

6    inference from the fact that witnesses have no clear

7    recollection of how or from whom they first learned that the

8    original vacancy announcement may have been issued incorrectly.

9    The fact is the vacancy announcement was issued incorrectly.

10   Therefore, I cannot find that the Agency acted improperly when

11   it took immediate steps to correct the vacancy announcement to

12   reflect the appropriate qualification requirements.

13          THE SUBJECT MATTER EXPERT AND EQUIVALENCY CREDIT:

14          The second matter is the matter of the subject matter

15   expert and equivalency credit.  The next issue is whether the

16   Agency acted improperly in selecting Mr. Robert Christiansen, as

17   the subject matter expert.  Here the Complainant's argument is

18   that the Agency improperly credited the selectee, Verene Miller,

19   with one full year of specialized experience equivalent to at

20   least FG-14 or Pay Band J level for her private sector aviation

21   industry experience in order to enable her to qualify as an

22   applicant for the disputed position.  As a corollary, the

23   Complainant argues that Mr. Christensen was improperly selected

24   as the subject matter expert so as to ensure that the outcome

25   would favor Ms. Miller.

1    Ms. Bergin testified that to assist her in interpreting
2    Ms. Miller's application she used Bob Christensen as a subject
3    matter expert to assess Ms. Miller's technical expertise
4    primarily.  She testified that after reviewing Ms. Miller's
5    application materials she had already concluded that Ms.
6    Miller's experience satisfied the managerial experience
7    qualifications at the required level FG-14 or Pay Band J based
8    on Ms. Miller's experience at Lane Aviation Corporation.  Ms.
9    Bergin testified that she had previously worked on a training
10   project with Mr. Christensen and she had confidence in his
11   ability.  She further testified that that he had been
12   recommended to her by Virginia Llewellyn just previously to
13   retiring and that she had suggested Mr. Christiansen would make
14   a good subject matter expert.

15   The Complainant's challenge to the Agency's use of Mr.
16   Christiansen as a subject matter expert was multi-faceted but
17   unpersuasive. I will briefly address each challenge here.

18   Number one.  With respect to Mr. Christensen's credentials
19   and expertise, I do not find that in exercising its discretion
20   to appoint Mr. Christensen, the subject matter expert, the
21   Agency's actions give rise to an inference of discriminatory
22   intent. Mr. Christensen testified that he had been a GS-12 Air
23   Traffic Controller from 19 -- I've got a typo here parties.  I
24   think it's 1971 to 1977, I'll make sure that it's corrected in
25   my copy when it's transmitted to you.  In the private air

1   industry for approximately nine years.  That in 1980 -- between
2   1977 and 1986 he had resumed private industry work for
3   approximately nine years and had returned to the FAA in 1986,
4   moving up the career ladder from GS-11 to GS-15 in March 2000.
5   His experience in the private air industry included owning and
6   operating his own aviation service and working as a pilot, chief
7   pilot, flight instructor, supervisor, general manager, and chief
8   officer, at various times for his own and other air taxi and
9   aviation operations.  Mr. Christensen's FAA career has included
10  experience working as an operations inspector, supervisor, unit
11  supervisor, assistant division manager and manager.  Mr.
12  Christensen has also served on three prior interview panels
13  screening supervisor and manager position candidates.  He
14  testified that after reviewing Ms. Miller's application packet
15  to determine her equivalency expertise under FAA guidelines for
16  the position in question, including a review of the position
17  description, Ms. Miller's specialized experience statement and
18  the required KSAO's, he concluded that she had the required
19  technical and managerial expertise commensurate with specialized
20  experience to at least an FG-14 or pay band level J.  Mr.
21  Christensen, under questioning by this Administrative Judge,
22  also identified the specialized requirements for this position
23  which he believed to be technical in nature and those he
24  believed to be managerial.  His opinion in this regard was not
25  much different from the opinion of the Complainant's own subject

1    matter expert, Mr. Westall.  I find, by a preponderance of the
2    evidence, based on the testimony at the hearing and the exhibits
3    admitted at the hearing and the record of investigation, that
4    Mr. Christensen was well qualified to serve as the subject
5    matter expert in this matter and that in selecting him the
6    Agency's actions do not give rise to an inference of
7    discriminatory intent.
8         The Complainant also challenged both the process by which
9    Mr. Christensen reached the conclusion that Ms. Miler's private
10   industry experience was commensurate with FAA FG-14 experience
11   and his ultimate conclusion that she in fact had that
12   experience.  The process I've already briefly described.  Mr.
13   Christensen testified that he spent about an hour reviewing Ms.
14   Miller's application packet and related documents.  Ms. Bergin,
15   who testified that she had brought the packets to his office and
16   requested his opinion, testified that he had spent 45 --
17   approximately 45 minutes.  In any case, the length of time spent
18   does not raise great concern.  Mr. Christensen fully articulated
19   legitimate nondiscriminatory reasons for the manner and
20   conclusion of his review and further set forth in writing those
21   reasons in the Record of Investigation and I am satisfied that
22   he gave the matter serious consideration and took appropriate
23   care in acting as a subject matter expert in this case.
24        The Complainant, through its expert, suggested that a more
25   accurate method of ascertaining Ms. Miller's equivalency

1   expertise in private industry would have been to look to the FAA

2   grade level -- to the grade level of the FAA inspector assigned

3   to Ms. Miller's former employer, Lane Aviation. The argument

4   advanced by the Complainant was that the inspector's grade level

5   would serve as an accurate benchmark indicator of the complexity

6   of Lane Aviation's operation and therefore be determinative of

7   the level of equivalency credit Ms. Miller should have been

8   given in determining whether she met the threshold qualification

9   requirements to apply for the position at issue.  The problem

10  with the Complainant's argument is twofold.  First, this method

11  of establishing equivalency expertise has never previously been

12  used in either their experience or at the Anchorage Flight

13  Standards office according to the testimony of every witness who

14  testified on this issue.  Secondly, no conclusive evidence was

15  presented by the Complainant that Lane Aviation in fact had a

16  level 13 or below grade FAA investigator assigned to its

17  operations at the time that Ms. Miller was employed at Lane

18  Aviation.  I am satisfied that Mr. Christensen's articulated

19  reasons for giving Ms. Miller equivalency credit for her private

20  industry work were legitimate and that they were not shown to be

21  pre-textual by the Complainant.  Ultimately the Complainant

22  failed to raise the credible inference of discriminatory intent

23  in the Agency's decision to use Mr. Christensen as the subject

24  matter expert

25       THE INTERVIEW PROCESS:

1        Next I'll address the interview process.  I am satisfied
2   based on the testimony at the hearing, the Record of
3   Investigation and the Exhibits admitted at the hearing, that the
4   interview and ranking process by the interview and referral
5   panel was unimpeachable.  Rick Girard, the chairmen of the
6   interview panel, was a credible, forthright witness.  He served
7   as the acting manager of the Anchorage Flight Standards District
8   Office at the time of the selection process at issue in this
9   case.  As the chair of the panel Mr. Girard testified that he
10  selected and convened the panel to interview the candidates for
11  the vacancy announcement.  He testified that after consultation
12  with Johnnie Wallace, the Assistant FSDO Manager, he instructed
13  the panel to have the same panel member ask the same question of
14  each interviewee and to refer the top three candidates for his
15  considera -- for the consideration of Mr. Wallace.  Mr. Girard
16  stated that no one, including Mr. Wallace or Mr. Duncan,
17  influenced the panel members.  The candidates were scored based
18  on KSAOs and interview questions and the three names forwarded
19  to Mr. Wallace were the Complainant with a total score of 4.1,
20  Ms. Miller with a total score of 3.9 and Robert Bown, also a
21  male born in 1943, with a total score of 3.9.  I am satisfied
22  that the interview panel acted in a professional and correct
23  manner, that it independently assessed the qualifications and
24  experience of each candidate, ranked independently based on the
25  established criteria and that the Complainant was unable in any

1    way to establish an inference of discriminatory intent based on

2    the process undertaken by the interview panel.  Indeed, the

3    panel's independent selection and ranking of Ms. Miller as one

4    of the top three candidates for selection to this position

5    ratifies Mr. Christianson's crediting of Ms. Miller with the

6    requisite equivalency experience.  That is, the panel,

7    independently reviewing from each other and from Mr.

8    Christensen,  Ms. Miller's application packet was sufficiently

9    impressed and convinced of her experience and expertise as to

10   rank her sufficiently high, in combination with her oral

11   interview scores, so as to recommend her to the selecting

12   official as one of the top three candidates for the position at

13   issue.

14        Other facts established at the hearing which bolstered the

15   Agency's articulated reasons for the selection process included,

16   number one, the Complainant, Mr. Wallace and Mr. Robert

17   Wedemeier, among others, testifying that Ms. Miller had recently

18   in June 2000 been a candidate for an FG-14 position of Aviation

19   Safety Inspector, and that while she had not been selected, in

20   this case by the Complainant, Mr. Carter, who recommended for

21   promotion not the highest ranking of the qualified candidates

22   referred, but a lower ranked top candidate, David McGlothlen,

23   had nevertheless been deemed sufficiently qualified to be placed

24   on the MPP certificate of qualified candidates.  And two, Mr.

25   Wedemeier's testimony that after not being selected for the FG-

1  14 position she had come to him, requested feedback on her

2  application packet and had been counseled by him to improve her

3  application materials and ensure that all her relevant

4  experience and qualifications were accurately and explicitly set

5  forth so that her application packet may prove to be more

6  convincing, effective and competitive in the future.  Ms. Miller

7  apparently took Mr. Wedemeier's advice.

8       Next, the selection process.  Mr. Wallace was the

9  selecting official.  He commented on the selection form and

10  articulated the same reasons at the hearing for selecting Ms.

11  Miller for the position.  Specifically, he stated that he

12  selected Ms. Miller because of her previous industry experience

13  as a manager, communications, accountability and team player

14  skills.  Mr. Wallace testified that Ms. Miller's communication

15  skills were superior to the Complainant's because she made the

16  extra effort to keep all who needed to be informed appraised of

17  the situation.  When asked what team leader skills Ms. Miller

18  possessed that made her better qualified than the Complainant,

19  Mr. Wallace stated that Ms. Miller considered everyone a part of

20  the team and does not set one person or group above the others.

21  Regarding Ms. Miller's accountability skills, Mr. Wallace

22  testified that she was better qualified than the Complainant

23  because of her understanding that if she were unable to meet a

24  deadline she would communicate with management to work on a

25  mutually agreed extension.

1     Mr. Wallace also testified that Mr. Duncan asked him to
2  make a selection in the best interest of the office, considering
3  who would be the best team player, but that Mr. Duncan had no
4  input in his decision to select Ms. Miller.  Mr. Wallace denied
5  stating that the Complainant was too old for this or any other
6  position, but admitted that he and the Complainant had been
7  parties to conversations involving, quote, retirement
8  qualifications and strategies, unquote, in the past.

9     John Duncan, the Division Manager, testified that he did
10  not have direct input in the selection process in this case.
11  Mr. Duncan testified that he met with Mr. Wallace after the
12  decision to promote Ms. Miller had been made and asked him to
13  explain why Ms. Miller was selected.  Apparently Mr. Duncan
14  testified that this was the same selection process and
15  justification process that was used when Mr. Carter, the
16  Complainant, chose to select Mr. McGlothlen rather than anyone
17  else, including the Complainant, as the selectee for the June
18  2000 position.  According to Mr. Duncan he did not usually
19  reject a manager's selection decision and had not done so since
20  1999.  Mr. Duncan could not remember saying he wanted Ms. Miller
21  promoted, but recalled expressing his opinion about working with
22  her on various projects and receiving positive feedback about
23  her abilities.  Mr. Duncan stated he was a mentor to Ms. Miller
24  and that he spoke with her about her future aspirations and
25  career in the FAA.  The testimony of Mr. O'Neal as an

1  impeachment witness was ineffective.  Mr. O'Neil testified that

2  he had not taken verbatim notes during his interview with Mr.

3  Duncan, that this case had been his first and only EEO

4  investigation and acknowledged that Mr. Duncan had emphasized

5  his involvement as a mentor for Ms. Miller and his desire for

6  her to succeed.  Neither the testimony or the record established

7  that Mr. Duncan sought to promote Ms. Miller because she was a

8  woman.  On the other hand, Mr. Duncan's testimony did make clear

9  that he found Ms. Miller to be very well qualified and her

10  supervisory and accountability skills superior and necessary for

11  the effective management of his office.  The issue under Title

12  VII is not whether a manager seeks to promote or recognize the

13  skills and experience of an individual employee.  The issue is

14  properly framed only under Title VII only when the manager seeks

15  to promote an individual regardless of lack of qualifications

16  based only on an impermissible reason.  I do not find that any

17  of the evidence established that Mr. Duncan at any time sought

18  to promote Ms. Miller for an impermissible reason, that is that

19  only because or -- she was a woman.  I also find that he did not

20  seek to promote her at all based on her gender status as a

21  woman.  I do find that Mr. Wallace, consistent with his own

22  testimony and the testimony of the witnesses, found Ms. Miller

23  to be an excellent candidate for promotion.

24      B.   The Age Discrimination Allegation:

25           Next I'll take up the matter of the age discrimination

1   allegation.  The Record of Investigation established that three
2   of the individuals named by the Complainant as possible
3   witnesses to Mr. Wallace's statement that the Complainant was
4   too old and should retire, Bruce Walker, Dave McGlothlen and
5   P.K. Willis, all testified in the Record of Investigation that
6   they could not recall ever hearing such statement.  At the
7   hearing Gerald Martelli, called by the Complainant, testified
8   only that he recalled Mr. Wallace discussing with the
9   Complainant retirement plans and/or that the Complainant had
10  enough money to do something else.  According to Mr. Martelli
11  the context of the remark was an ongoing joke about retiring
12  when work and or the conditions at work were such that people
13  contemplated retirement as an alternative to dealing with the
14  current hardship at the office.  And also he characterized it as
15  a joke between two people who have known each other a long time.
16  Essentially that is the substance of the allegations under the
17  age discrimination allegation and I do not find that there was
18  any inference of age discrimination produced by the Complainant
19  and certainly no inference sufficient to -- certainly no
20  evidence sufficient to raise the inference of age
21  discrimination.

22          C.    The Agency's Articulated Reasons:

23          I will now address the Agency's articulated reasons very
24  briefly.  In coming forward to present a legitimate
25  nondiscriminatory reason for its selection decision, Agency

1   officials testified at the hearing and also provided statements
2   contained in the Report of Investigation.

3       On the issue of gender discrimination, I have already
4   discussed the ranking, selection and interview process and find
5   that the Agency's witnesses articulated legitimate,
6   nondiscriminatory reasons for selecting Ms. Miller rather than
7   Mr. Carter for the position at issue and that the Complainant
8   failed to carry his burden of establishing that those reasons
9   were not pre-textual reasons for discrimination.

10      On the issue of age, I find that no credible evidence was
11  established by a preponderance of the evidence that either age
12  based discriminatory remarks were made against the Complainant
13  or that the Agency failed to select the Complainant for the
14  position at issue based on his age.  Although the selectee, Ms.
15  Miller, was six years younger than the Complainant at the time
16  of the selection, no evidence sufficient to establish an
17  inference of discrimination has been produced.  Moreover,
18  several of the Agency's witnesses testified that generally the
19  FAA workforce was more mature, that is older than the other
20  agencies based in large part on the required level of experience
21  and training necessary to gain employment with the FAA.  This ha
22  been substantiated by the record of this hearing which has
23  established the experience of all of the witnesses who testified
24  in this matter.  Moreover, Mr. Carter is a youthful and vigorous
25  looking man and nothing about his outward appearance, demeanor

1   or comportment, suggests an aging employee. Finally, with the

2   exception of Mr. O'Neal who appeared to be more youthful than

3   the rest, all the witness who testified were in age comparable

4   to the Complainant.  Once again, both during the Agency's

5   position that it values and recruits an older workforce.

6       Based on my review of the evidence contained in the

7   investigative record and presented at the hearing I find that

8   the Agency articulated legitimate nondiscriminatory reasons for

9   its non-selection of the Complainant for the position of

10  Supervisory Aviation Safety Inspector, FV-1825-K, on August 4,

11  2000.

12      D.   The Complainant's Showing of Pretext:

13      The Complainant -- based on the Complainant file and the

14  evidence admitted into the record at the hearing, I also find

15  that the Complainant has not shown by a preponderance of the

16  evidence that the Agency's legitimate nondiscriminatory

17  explanation for its selection of Ms. Miller was pre-textual or

18  discriminatory based on gender or age.

19                          VII.

20          FINDINGS OF FACT AND CONCLUSIONS OF LAW

21      A.   I find that the Complainant did establish a *prima*

22  *facia* case of discrimination based on gender and age arising

23  from his non-selection for the position of Supervisory Aviation

24  Safety Inspector;

25      B.   I find that the Complainant did not meet his burden of

1  proof to show that the Agency engaged in intentional

2  discrimination based on sex and/or age when it did not select

3  him for the position of Supervisory Aviation Safety Inspector;

4       C.   Based on these findings, I conclude that the Agency

5  did not unlawfully discriminate against the Complainant on the

6  basis of sex or age when it did not select the Complainant to

7  fill the position of Supervisory Aviation Safety Inspector.

8                            VIII.

9                           REMEDIES

10      Having concluded that the Agency did not engage in

11 unlawful discrimination towards the Complainant, the Complainant

12 is not entitled to an award of damages or other remedies.

13      THE COURT:  Mr. Fleischer, I would ask you whether you

14 would waive the oral reading of the notice of appeal on the

15 record.

16      MR. FLEISCHER:  Yes, we so waive Your Honor.

17      THE COURT:  Thank you parties.  Thank you both, as I've

18 indicated, for a very professionally and well tried case from

19 all sides.  It was a difficult case and a long case and I thank

20 you both.  And we are off the record.

21      MR. FLEISCHER:  Thank you Your Honor.

22      (Off record at 12:55 p.m.)

23

24

25

KRON ASSOCIATES
1113 W. Fireweed Lane, Suite 200
Anchorage, Alaska  99503
(907) 276-3554