DEBORAH M. SMITH
Acting United States Attorney

SUSAN LINDQUIST
Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, #9, Rm. 253
Anchorage, Alaska  99513-7567
Telephone: (907) 271-5071
Facsimile: (907) 271-2344
susan.lindquist@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHANDLER D. CARTER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>NORMAN Y. MINETA<br>SECRETARY OF TRANSPORTATION,<br><br>　　　　Defendants. | Case No. 3:04-cv-178-JKS<br><br>**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE MOTION FOR SUMMARY JUDGMENT** |

　　　Mr. Carter fails to rebut the legitimate reasons the FAA put forth for finding Ms. Miller qualified to bid, and for Mr. Wallace's selection of Ms. Miller.

I.   MR. CARTER DID NOT PRODUCE ANY EVIDENCE THAT MR. CHRISTENSEN OR MS. BERGIN DISCRIMINATED AGAINST HIM WHEN THEY FOUND MS. MILLER QUALIFIED TO BID.

Mr. Carter presents no evidence that Mr. Christensen or Ms. Bergin had any discriminatory intent when they found Ms. Miller qualified to bid. Mr. Carter first argues that other people were not given credit for their outside work which was favoritism, and that supports an inference of discrimination on the basis of sex. Response at 6. He notes that applicants Ms. Jokela and Mr. Garoutte had outside experience that was not considered. Valerie Jokela is a woman. Thus any alleged favoritism is not toward women in general, it would only be toward Ms. Miller in particular, as another woman's outside experience was not considered. Thus, even if true, it is not discrimination on the basis of sex. Moreover, the theory of favoritism is simply wrong. There were six candidates and all the others qualified to bid because they had a year of experience in the next lower grade, so Ms. Bergin had no reason to look at their outside experience to determine if they qualified for the bid. Ex. C at 393-94. Ms. Bergin only reviewed Ms. Miller's outside position because Ms. Miller did not have sufficient FAA experience to qualify. There was no discrimination.

Next, Mr. Carter argues that Mr. Christensen discriminated against Mr. Carter on the basis of sex because Mr. Christensen "blew off" his review of

Ms. Miller's outside managerial experience because he reasoned she would not get the job. Response at 7. This fact, even if true, does not relate to discrimination, it relates to Mr. Christensen's performance. Indeed, if he "blew it off" because he did not think she would get the job, Mr. Christensen is on Mr. Carter's side. This fact does not support any finding that Mr. Christensen discriminated against Mr. Carter on the basis of sex when he found Ms. Miller qualified to bid.

The only argument presented that Ms. Bergin did anything to discriminate against Mr. Carter, or males, is the allegation that this selection was the only time the vacancy announcement was changed to allow for specialized experience. Response at 6. This argument is inconsistent with his statement at his deposition that he does not believe that amending the vacancy announcement was discriminatory. Ex. K at 14 (Motion at 3). Ms. Bergin explained in detail that the amendment was made to comply with the 1996 personnel reform rules which allowed outside experience to be evaluated for equivalency. Ex. C. at 352-55. (Motion at 3).

Mr. Carter's evidence in regards to Ms. Bergin and Mr. Christensen fails to produce even a scintilla of evidence of a discriminatory motive. Mr. Carter fails to rebut the legitimate reasons they put forth for their decisions to amend the vacancy notice and to find Ms. Miller qualified to bid. The government asks this Court to

find that Ms. Bergin did not discriminate against Mr. Carter when she amended the vacancy notice, and that Mr. Christensen did not discriminate against Mr. Carter when he found Ms. Miller qualified to bid.

II.  MR. CARTER PRESENTED NO EVIDENCE THAT MR. WALLACE DISCRIMINATED AGAINST HIM ON THE BASIS OF SEX WHEN HE SELECTED MS. MILLER.

Mr. Carter bases his sex discrimination claim on the fact that Mr. Duncan stated that he wanted Ms. Miller promoted. For purposes of summary judgment the Court can accept the fact as true. This fact does not advance his discrimination case because Mr. Duncan was not expressing the desire to have women promoted. He was not praising other women who were competing for managerial positions, like Ms. Graham and Ms. Jokela. He liked Ms. Miller and certainly Mr. Wallace knew that Mr. Duncan spoke highly about Ms. Miller's skills.

Mr. Carter buttresses his theory that Mr. Duncan was promoting Ms. Miller by arguing that Mr. Duncan personally told Ms. Miller that the bid would be changed, which would allow her to bid for the position. Response at 5. He calls this a unique act of the top boss going to an inspector. His cite, however, is to his own testimony, and it does not support this statement. Mr. Carter testified: "And she told me at the time that John Duncan had told her that the bid was going to be

changed so that she could bid on it." Ex. A at 25. There is no information about whether Mr. Duncan went to Ms. Miller, or whether she went to him, whether they met passing in the hall, or they attended a meeting when the topic came up. Mr. Carter wants the Court to think Mr. Duncan went out of his way to pave the way for Ms. Miller, but the evidence does not support this inference. Moreover, Mr. Carter, himself, told Ms. Miller that the bid was changed and he encouraged her to submit the best application possible. Motion at 18; Ex. R at 11; Ex. S. The fact that Ms. Miller heard about the change of bid from Mr. Carter does not raise the inference that Mr. Carter wanted Ms. Miller to get the job because he wanted a woman selected. Similarly, the fact that in some unknown context Mr. Duncan told Ms. Miller about the bid change does not raise an inference that Mr. Duncan intended to discriminate against Mr. Carter on the basis of sex.

Lastly, Mr. Carter's theory lacks a crucial causal connection. There is simply no evidence that Mr. Wallace was doing Mr. Duncan's bidding. There is only Mr. Carter's assumption that all lower managers want to please the boss. Mr. Wallace, the selecting official, did not hear the statement. If he did not hear it, it did not play a role in his selection. Mr. Wallace knew that Mr. Duncan liked Mr. Miller's work, and that was normal because Mr. Wallace also liked Ms. Miller's work.

Mr. Carter argues that Ms. Miller should not have been selected because she had received a violation for flying. Response at 6. The position at issue, however, was not a flying job and mechanical skills and flying skills were not relevant. Ex. I at 831. Even if flying skills were relevant, FAA managers had selected Ms. Miller to fly VIP's within Alaska after the incident, which demonstrates confidence in her flying skills. Ex. I at 831. In addition, the regulations allow individuals with two flying violations to apply for positions in the Aviation Safety Series. Thus, even if flying skills were relevant to this second level supervisory position, there is no reason for a flying violation to have played any role in this selection. See Ex. U.

Mr. Duncan's stray comment that he wanted Ms. Miller promoted, even when construed favorably to Mr. Carter, demonstrates nothing more than an interest in Ms. Miller. It does not raise an inference of discrimination on the basis of sex. Mr. Duncan was not promoting women in general over men. He liked Ms. Miller. There is no evidence that the comment played any role in Mr. Wallace's selection. There is no independent evidence that Mr. Wallace favored women and intended to discriminate against men.

III. STRAY COMMENTS ABOUT A COMMON TOPIC DO NOT RAISE THE INFERENCE OF AGE DISCRIMINATION.

Mr. Carter bases his age discrimination case primarily upon one or two instances when Mr. Wallace made comments about retirement. Response at 7.

Just recently, the Court of Appeals for the Ninth Circuit decided <u>Phillips v. Boeing Co.</u>, WL 455547 (9th Cir.) (February 24, 2006), which dealt with stray comments in age discrimination cases. Ex. AA. In <u>Phillips</u>, the supervisor stated on multiple occasions, "You're an old man, you've been doing this a long time." The Court reversed the District Court's grant of summary judgment and wrote:

> Although we have held that stray remarks are insufficient to establish discrimination, *see* <u>Merrick v. Farmers Ins. Group</u>, 892 F.2d 1434, 1438 (9th Cir.1990), the comments in this case could be innocuous or invidious depending on a number of factors, including facial expression, vocal inflection, and the circumstances in which the comments were uttered.

Ex. AA at *1. When the comments are "uttered in an ambivalent manner and . . . not tied directly to [the employment decision]," the Ninth Circuit has viewed the comments as " at best, weak circumstantial evidence of discriminatory animus." <u>Nesbit v. Pepsico</u>, 994 F.2d 703, 705 (9th Cir. 1993).

In this case, there is evidence about the circumstances in which the comments about retirement were made. Although there is no evidence about vocal expression or facial expressions, whatever they were could not have been alarming because Mr. Carter stated that at the time he thought the comments were insignificant. Motion at 8; Ex. A at 28. Mr. Martelli thought that the comments about retirement need to be considered in the context that Mr. Wallace and Mr. Carter were two old friends who

CARTER v. MINETA
Case No. 3:04-cv-178-JKS                                    7

go back a long way and have known one another for a long time. Ex. B. at 85. Although he cannot remember the date of the comment, he thinks it was made just before the position vacancy was announced. B at 85. Mr. Wallace had talked with Mr. Carter many times about retirement. Ex. H at 772-73, 788-89. At the time, Mr. Carter was 65 and Mr. Wallace was 58 and retirement would be a natural topic of conversation. At the time, there was also a lot of turmoil in the office and people had not been held accountable for their assignments. Ex. B at 88, Ex. H at 764; Ex. J at 837. As such, retirement would offer a nice exit from a troubled office and it would not be unusual for Mr. Wallace to tell Mr. Carter that he did not need the grief at the office.

The retirement comment was not made within the context of the hiring decision. Mr. Carter believes the comment was made between March and July 5, though in his deposition testimony, he states that the comment was made before June. Ex. A at 29; Ex. K at 55. Mr. Wallace received the packets for the top three applicants on July 20 and it took him a few weeks to make his decision. Ex. H at 749. Taking all the circumstances into consideration, the comments about retirement between two long time friends were simply stray comments that are not sufficient to create a genuine issue of material fact for trial.

## CONCLUSION

Viewing the evidence cumulatively, and in a light most favorable to Mr. Carter, it falls short of creating an inference of sex or age discrimination. Ms. Bergin and Mr. Christensen set forth legitimate reasons for finding Ms. Miller qualified to bid and Mr. Wallace set forth many legitimate reasons for his hiring decisions. The government asks that it be granted summary judgment.

Respectfully submitted on March 10, 2006.

DEBORAH M. SMITH
Acting United States Attorney

s/ Susan J. Lindquist
Assistant U. S. Attorney
222 West 7th Ave., #9, Rm. 253
Anchorage, AK 99513-7567
Phone: (907) 271-3378
Fax: (907) 271-2344
E-mail: susan.lindquist@usdoj.gov
AK #9008053

**CERTIFICATE OF SERVICE**

I hereby certify that on March 10, 2006,
a copy of the foregoing **DEFENDANT'S REPLY
TO PLAINTIFF'S RESPONSE IN OPPOSITION TO THE
MOTION FOR SUMMARY JUDGMENT** was served
electronically on Hugh W. Fleischer.

s/ Susan J. Lindquist