UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA

| | |
|---|---|
| CHANDLER D. CARTER,<br><br>          Plaintiff,<br><br>     v.<br><br>NORMAN Y. MINETA, SECRETARY OF TRANSPORTATION,<br><br>          Defendant. | Case No. 3:04-cv-00178-JKS<br><br>MEMORANDUM DECISION<br>[Re:  Motion at Docket 13] |

I.  MOTION PRESENTED

At docket 13 defendant Norman Y. Mineta, Secretary of Transportation ("the Secretary") has moved for summary judgment.  Plaintiff Chandler D. Carter ("Carter") has opposed the motion.  The court having reviewed the moving papers and opposition has determined that oral argument would not assist in determining the motion.

II.  BACKGROUND/JURISDICTION

Mr. Carter alleges that in promoting a younger female applicant instead of him the Federal Aviation Administration ("FAA"), an agency of the Department of Transportation, discriminated against him in violation of: (1) the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.*; and (2) Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*

The basic facts in this case are undisputed.  In May 2000 Carter, then a FAA employee, applied for a position as a Supervisory Aviation Safety Inspector (Operations) with the FAA in Anchorage.  At the time of his application, Mr. Carter was 65 years of age.  A selection panel, after reviewing the applications and interviewing the applicants, submitted three names to Johnnie Wallace ("Wallace"), the hiring official—one other male besides Mr. Carter and that of a female, Verene Miller, (age 57), whom Mr. Wallace selected for the position.  The selection panel ranked Mr. Carter first and the other two as tied.

Prior to initiating this action, Mr. Carter filed a complaint with the U.S. Equal Employment Opportunity Commission, which entered its final decision adverse to Mr. Carter and mailed a copy thereof to Carter on May 26, 2004.[1] Mr. Carter timely filed his complaint on August 20, 2004.

This Court has jurisdiction under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-16(c).

### III. ISSUES PRESENTED

The court is presented with two issues: did the actions of the FAA constitute discrimination on account of (1) age[2] or (2) sex.[3]

### IV. STANDARD OF REVIEW

Summary judgment is appropriate if, when viewing the evidence in the light most favorable to the non-moving party, there are no genuine issues of material fact, and the moving

---

[1] Carter alleges that the final decision was mailed on May 26, 2004; however, the stamped date, which is somewhat blurred and not totally legible, shows it may have been mailed as early as May 20. The final decision of the EEOC advised Carter of his right to appeal within 90 days of receipt of the decision and, further, "for timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed." The presumed date of receipt, May 25, 2004, is less than 90 days prior to the date the complaint was filed and is, therefore, timely in any event.

[2] 29 U.S.C. § 633a(a) ("Nondiscrimination on account of age in Federal Government Employment") provides in relevant part:
(a) Federal agencies affected
All personnel actions affecting employees or applicants for employment who are at least 40 years of age (except personnel actions with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of Title 5, in executive agencies as defined in section 105 of Title 5 (including employees and applicants for employment who are paid from nonappropriated funds), * * * shall be made free from any discrimination based on age.

[3] 42 U.S.C. § 2000e-16(a) ("Employment by Federal Government") provides in relevant part:
(a) Discriminatory practices prohibited; employees or applicants for employment subject to coverage
All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), * * * shall be made free from any discrimination based on race, color, religion, sex, or national origin.

party is entitled to judgment in its favor as a matter of law.[4]  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] ruling on a motion for summary judgment."[5]  In response to a properly supported motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.[6]  The issue of material fact required to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a fact-finder to resolve the parties' differing versions of the truth at trial.  There is no genuine issue of fact if, on the record taken as a whole, a rational trier of fact could not find in favor of the party opposing the motion.[7]

## V. DISCUSSION

In order to assert a valid Title VII claim for sex discrimination, a plaintiff must make out a prima facie case establishing that the challenged employment action was either intentionally discriminatory or that it had a discriminatory effect on the basis of gender. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Harriss v. Pan Am. World Airways, Inc.,* 649 F.2d 670, 673 (9th Cir.1980).  First, the Court notes that this case presents a case of an one-time disparate treatment of a particular employee, not a disparate impact of a general policy on a protect class, either by reason of sex or age.  Mr. Carter has neither alleged nor introduced any evidence that either the Secretary or the hiring official in this case, Mr. Wallace, generally or usually base employment decisions upon either sex or age or that the promotion policies of the agency treat men less favorably than women or older workers less favorably than younger.  Thus, this Court must decide the motion at bar based upon the facts applicable to the case, *i.e.*, whether the adverse employment action was discriminatory as to Mr. Carter.

---

[4] FED. R. CIV. P. 56(c); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (*en banc*); *Taylor v. List*, 880 F.2d 1040, 1044 (9th Cir. 1989).

[5] *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

[6] FED. R. CIV. P. 56(e); *Henderson v. City of Simi Valley*, 305 F.3d 1052, 1055-56 (9th Cir. 2002).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).

Under that framework, the burden of production first falls on Carter to make out a *prima facie* case of discrimination. He may do so by showing that (1) he belongs to a protected class, (2) he was qualified for the position to which he wished to be promoted, (3) he was denied a promotion to that position, and (4) the promotion went to someone outside the protected class. *Coughlan v. American Seafoods Co. LLC,* 413 F.3d 1090, 1094 (9th Cir.2005). "The requisite degree of proof to establish a prima facie case is minimal; plaintiff need only offer evidence giving rise to an inference of unlawful discrimination." *Messick v. Horizon Industries, Inc.,* 62 F.3d 1227, 1229 (9th Cir.1995) (citation omitted).

Once a plaintiff establishes a *prima facie* case, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell,* 411 U.S. at 802. If the defendant meets that burden, plaintiff must show that the reason was merely a pretext for intentional discrimination. *Tex. Dep't. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253 (1981). The Ninth Circuit recently reviewed these principles in *Lindsey v. SLT Los Angeles LLC*, 432 F.23d 954, 962–63 (9th Cir.2005).

> Once a defendant presents legitimate non-discriminatory reasons, the presumption of discrimination "drops out of the picture," and the plaintiff has the new burden of proving that the proffered reasons were a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "[A] plaintiff can prove pretext in two ways: (1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Chuang,* 225 F.3d at 1127 (citation omitted). Although the inference of discrimination created from the *prima facie* case is gone, the evidence used in its establishment may be considered for examining pretext. *Id.* (citing *Reeves,* 530 U.S. at 146-47, 120 S.Ct. 2097) ("A disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons."); *see also Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985), *amended by* 784 F.2d 1407 (1986) ("Once a *prima facie* case is established either by the introduction of actual evidence or reliance on the *McDonnell Douglas* presumption, summary judgment for the defendant will ordinarily not be appropriate on any ground relating to the merits because the crux of a Title VII dispute is the 'elusive factual question of intentional discrimination.' " (citation omitted)).

Nevertheless, "when evidence to refute the defendant's legitimate explanation is totally lacking, summary judgment is appropriate, even though [the] plaintiff may have established a minimal *prima facie* case based on a *McDonnell Douglas* type presumption." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 890–91 (9th Cir.1994).

These principles apply generally to age discrimination cases as well. *See Nidds v. Schindler Elevator Corp.,* 113 F.3d 912, 916 (9th Cir.1997). The Court must apply these principles to each of the alleged discrimination claims in the case at bar.

A. *Discrimination Based on Sex*. Mr. Carter has established the four elements necessary for a prima facie case of discrimination based sex: (1) he belongs to a protected class (male); (2) he was qualified for the position to which he wished to be promoted; (3) he was denied that promotion; and (4) it went to a person outside his protected class (a female). The critical issues on summary judgment become whether: (1) the Secretary has articulated a legitimate non-discriminatory reason for promoting Ms. Miller over Mr. Carter and (2) Mr. Carter has proven those reasons are merely pretextual.

At the EEOC hearing, upon examination by counsel for Mr. Carter, Mr. Wallace stated as his reasons for selecting Ms. Miller:[8]

> Q. And when you say section two is what you completed, what is that section?
>
> A. That's the basis for selection.
>
> Q. And what did you put for the basis for selecting Ms. Miller for the job?
>
> A. My statement was that three applicants were referred by the interview panel. I am selecting Verene Miller based upon her previous industry experience as a manager, second level, communications, accountability and team player skills.

Wallace further testified concerning his reasons for selecting Ms. Miller:[9]

> Q. With regards to communications, in your opinion did Ms. Miller have better communications skills than Mr. Carter and did you. . . . . .
>
> A. I felt that she did. She kept us managers and supervisors well informed on issues, whether it be the 4040 program or the training program. She always kept us well informed of what was happening, were we on time, were we behind, did

---

[8] Defendant's Motion for Summary Judgment, Exh. K, p. 22.

[9] *Id*, pp. 25–28.

we need more time. I felt that she was always very capable of explaining where we were at with the different programs.

Q.   And what about Mr. Carter, what was your opinion about his communication skills?

A.   Well, I didn't have a whole lot of communication with Mr. Carter. He probably communicated more with Mr. Girard. Tom didn't come and talk very often. We did have weekly meetings with the managers and supervisors that we held and communicated at that time. But in a lot of cases we would go back and ask the – either the section supervisors or the man – the Unit Supervisors where are we at in a particular project. So I felt that I was not well informed all the time.

Q.   You indicated that accountability was a factor in your decision. What was your opinion of Verene's capabilities as far as accountability went?

A.   Well, I felt there was – she had an outstanding ability to do that. She allowed no one to circumvent any of the orders or the programs, stayed right on track with the order, and let you know why you couldn't or could do it.

Q.   How about with regard to Mr. Carter, any experience that you had with regard to his accountability other than what you indicated with communications that you sometimes felt a need to go ask what was going on?

A.   Can't think of anything in particular in that are. Nothing specific.

Q.   You also indicated in your – the reasons for your selection that their team player skills were important. Could you give me your opinion that you had at the time of what Verene Miller's team player skills were?

A.   Well being in the positions that she was holding as far as the Training Program Manager and the – in charge of the 4040 program and the King Air program, I felt that she was always a team player and considered everyone in the office. She did not neglect anyone or allow any one person to be set above anybody else. She considered everybody fairly, the same.

Q.   Did you – I think you mentioned something about team player skills with regard to her private industry experience, is that correct?

A.   That's correct.

Q.   And what did you glean from that private industry experience. . . . .

A.   Well. . . . . .

Q.   . . . . .about team players?

A.   Based upon my history working in similar organizations it takes a real team player to make an organization profitable and meet all the customer's needs.

> Q. What about with respect to Mr. Carter, what opinion did you have at the time of his team player skills?
>
> A. Well on Mr. Tom Carter's team player skills I felt that he was mostly concerned with the Operations side of the house. I didn't see him as considering the whole office, the Airworthiness side or the administrative staff as being part of the whole.
>
> Q. So the conclusion of your analysis of the bid packages plus your personal experience in working with both Ms. Miller and Mr. Carter, you selected Ms. Miller, is that correct?
>
> A. That's correct.

The non-discriminatory reasons articulated by the Secretary are certainly not "unworthy of credence" as being inherently unbelievable or implausible. The criteria used to promote in this case was mixed, having both objective and subjective elements. When an employer combines subjective and objective criteria, the plaintiff is generally required to identify the specific offending criterion upon which the employer relied. *See Wards Cove Packing Co. v. Antonio*, 490 U.S. 642, 657 (1989) (superceded in non-relevant part by statute, *see* Civil Rights Act of 1991, Pub.L. No. 102-166, § 1745, 105 Stat. 1071 (1991)). Mr. Carter's somewhat oblique attack on the qualifications of Ms. Miller notwithstanding, the objective element, *i.e.*, qualification for position, was satisfied by both Mr. Carter and Ms. Miller. With respect to the subjective elements, Mr. Carter has not identified any element that is other than sex or age neutral, either in content or as applied. Therefore The Court must look to other evidence to establish that the selection of Ms. Miller was based upon a sex-related discriminatory animus.

Plaintiff's argument follows basically three lines. First, that Mr. Wallace's supervisor had expressed a desire that Ms. Miller be promoted and assisted her in making application. Second, the process was altered in a manner that benefitted Ms. Miller, *i.e.*, the qualifications were changed after the initial listing of the position to permit consideration of experience outside the FAA, which was not granted to other applicants. Third, Mr. Wallace disregarded the existence of a serious safety of flight violation is Ms. Miller's record. Assuming that, as characterized by Mr. Carter, these were unprecedented and even blatantly unfair, they do not, in themselves, indicate a preference based upon sex. Moreover, in addition to mischaracterizing

some of it, the "evidence" relied upon by Mr. Carter is for the most part hearsay, including hearsay upon hearsay, or Mr. Carter's suppositions of what must have happened.

The evidence relied on to establish that Ms. Miller was the only person to receive credit for experience outside the FAA was the testimony of Mr. Carter at the EEOC hearing.[10]

> Q.   Do you know, Mr. Carter, whether the Agency gave credit to yourself or to other candidates, other than Ms. Miller, for outside work, in other words work that they had done prior to coming to the Agency?
>
> A.   My understanding is Ms. Miller received credit for her equivalency time that she worked at Lane Aviation but that equal experience rating was not given to anyone else. She was the only one who received that as best I could determine.

Whatever Mr. Carter's "understanding" was or what he "could determine," does not prove either that Ms. Miller was the only one who received credit or, even if she was, it was as a result of a preference for a female. Mr. Carter was not part of the selection process in any capacity and is unable to testify as to that fact as a matter within his personal knowledge.[11] Moreover, there is no evidence that any candidate for the position, including Mr. Carter, male or female,[12] was prejudiced because either the selection committee or Mr. Wallace did not consider the candidate's outside experience if that, in fact, were true.[13]

Mr. Carter also attempts to attack the validity of the evaluation of Ms. Miller's outside experience. At the EEOC hearing, Robert Christensen, who evaluated the outside experience, testified that Ms. Miller's experience very easily met that of a Unit Supervisor position at the

---

[10] Plaintiff's Response to Defendant's Motion for Summary Judgment, Exh. p.15.

[11] FED. R. CIV. P. 56(e) (an affidavit "shall be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); *Norita v. Nortthern Mariana Islands*, 331 F.3d 690, 697 (9th Ci.2003); *see* FED.R.EVID. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter.").

[12] Mr. Carter refers to at least one female he asserts was not given proper credit for experience outside the agency. Plaintiff's Response to Defendant's Motion for Summary Judgment, p. 15.

[13] The Court notes that the Lane Aviation experience that Mr. Carter believes was improperly considered was qualifying experience, *i.e.*, did Ms. Miller have at least one year in a position one grade level below the position for which she applied or its equivalent. There is no evidence that any other candidate was disqualified because he or she did not have the requisite experience but would have had outside experience been considered.

Anchorage FSDO.[14]  Mr. Christensen further testified that he had prepared a affidavit of his results and since had looked more thoroughly at the package he originally reviewed and that it "had strengthened my original opinion that she did have the equivalency experience of a unit supervisor without a doubt in my mind."[15]  Mr. Christensen further testified in response to a question by counsel for Mr. Carter that he had not told anyone that he didn't think Ms. Miller was qualified or that he at any time believed she was not qualified.[16]  To counter this, Mr. Carter offers his own testimony at the EEOC hearing where in response to questions concerning his knowledge of the review by Mr. Christensen and a conversation Mr. Carter had with an inspector, Robert Walker, concerning it he testified.[17]

> A. He [Mr. Christensen] told Mr. Walker – this meeting with Mr. Walker occurred during the time that Mr. Christensen was writing his affidavit and he told Mr. Walker that he had reviewed the application and now he was being held accountable for what he did and that he had to complete the affidavit.  And he also told Mr. Walker that he – words to the effect that he did not think Ms. Miller would be selected so he just sort of blew it off.

Not only is this testimony hearsay upon hearsay but it is directed at the credibility of Mr. Christensen's testimony.  In ruling on a motion for summary judgment, this Court is not permitted to determine credibility. *Dominguez-Curry v. Nevada Transp. Dept.*, 437 F.3d 1027, 1035–36 (9th Cir.2005);  *see Bodett v. CoxCom, Inc.,* 366 F.3d 736, 742 (9th Cir.2004) ("[i]n other words, the factfinder's general duty to draw all reasonable inferences in favor of the nonmovant does not require that the court make a credibility determination on the [movant's] evidence at the summary judgment stage, even if it has reason to disbelieve that evidence); *see also Williams v. Calderon,* 48 F.Supp.2d 979, 989 (C.D.Cal.1998) (noting in the context of a *habeas* claim "[t]he Court is not to determine issues of credibility on a motion for summary judgment; instead, the truth of each party's affidavits is assumed"), *aff'd sub nom. Williams v. Woodford,* 384 F.3d 567 (9th Cir.2004).  Moreover, and more importantly, it does nothing to

---

[14] Defendant's Motion for Summary Judgment, Exh. E, pp. 10–14.

[15] *Id.*, p. 14.

[16] *Id.*, p. 16.

[17] Plaintiff's Response to Defendant's Motion for Summary Judgment, Exh. pp.22–23.

support a finding that in selecting Ms. Miller for promotion Mr. Wallace was motivated by a sex-based discriminatory animus.

As to the seriousness of Ms. Miller's flying violation and its knowledge by Mr. Wallace, the only evidence proffered is the opinion of Mr. Carter. Not only was it not disqualifying,[18] but Mr. Carter has not established it's relevance to either the discrimination charge or Ms. Miller's ability to perform in a higher level supervisory position. While this may establish that Mr. Wallace made an unwise or poor decision in selecting Ms. Miller, it does not establish a discriminatory motive. *See Coleman v. Quaker Oats, Co.*, 232 F.3d 1271, 1285 (9th Cir.2000).

Turning to evidence that Mr. Wallace was influenced by the desires of this supervisor, John Duncan, the Division Chief. At best, this shows that the Division Chief had a high regard for Ms. Miller's capabilities as an employee and believed her to be deserving of promotion. Other than fact that he expressed a general desire that she be promoted, there is no evidence whatsoever in the record that this factor entered into the rankings by the selection committee or the decision of Mr. Wallace. But, more importantly, even it did, Mr. Carter points to no evidence that establishes this preference for Ms. Miller was based upon a sex-based discriminatory animus. If this were a "command influence" case, which is not before the court, Mr. Carter has provided sufficient evidence to defeat a motion for summary judgment. But this not a "command influence" case; it is a sex discrimination case under Title VII of the Civil Rights Act of 1964, as amended.[19]

In summary, Mr. Carter has provided no evidence whatsoever that the selection of Ms. Miller for promotion was the result of any sex-based discriminatory animus. That Mr. Carter was rated higher than Ms. Miller by the selection panel, Ms. Miller is female, Ms. Miller was given credit for experience outside the FAA, received a non-disqualifying notice of violation, and the Division Chief supported her promotion does not create an inference that her selection was based upon her sex.

---

[18] Defendant's Motion for Summary Judgment, Exh. U.

[19] Nor, even if this occurred, was it necessarily inappropriate. *See Merrick v. Farmer's Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990).

B. *Discrimination Based on Age*. There is one significant difference in the test applied in age-discrimination cases—the fourth prong (the position went to a person outside the protected class) is inapplicable. Mr. Carter is clearly in the protected class, *i.e.*, over the age of 40. Ms. Miller was also, at the time she was promoted over the age of 40. However, the fact that the younger person to whom Mr. Carter lost out was also in the protected class is irrelevant to his age discrimination claim if he lost out because of his age. *O'Connor v. Consolidated Coin Caterer's Corp*, 517 U.S. 308, 312 (1996). Thus, Mr. Carter has also established a *prima facie* case of age discrimination in that he: (1) is a member of the protected class (over age 40); (2) was qualified for the position; and (3) was denied promotion.

As with the sex discrimination charge, the Secretary has articulated a legitimate non-discriminatory reason for promoting the younger person, Ms. Miller, over Mr. Carter. However, the factual setting with respect to the pretextual issue differs materially. In relation to age, there is credible evidence in the record that Mr. Wallace made comments to both Mr. Carter and/or other persons concerning Mr. Carter's age, length of service, and eligibility for retirement. As the Secretary notes, "stray" comments are not usually sufficient to establish discrimination. *See Merrick v. Farmer's Ins. Group*, 892 F.2d 1434, 1438 (9th Cir.1990). Also, as the Secretary correctly notes, ambivalent comments not directly tied to the selection process are weak circumstantial evidence of a discriminatory animus. *Nesbit v. Pepsico*, 994 F.2d 703, 705 (9th Cir.1995).

However, this case involves more than a single isolated off-hand or innocuous remark. The evidence suggests that not only were the remarks made in close proximity to the time that Mr. Wallace made his decision to promote Ms. Miller, a younger candidate, they may have been made after the vacancy was announced.

Gerald Martelli, Jr. testified at the EEOC hearing as to a conversation to which he was privy.[20]

> Q.     Okay. Well let me just read this to you if I may. Response is, and I quote, not exactly. I recall that Johnnie Wallace made a statement ot Tom that Tom was old enough to retire and or Tom had enough money to do something else. * * * *?

---

[20] Defendant's Motion for Summary Judgment, Exh. B, pp. 3–4.

>   A.   It refreshes my recollection of the conversation between Johnnie Wallace and I, however, I do not recall Tom Carter being present whenever that conversation took place. I just recall Johnnie Wallace being there and making the comment to me that he had that conversation with Tom.
>
>   Q.   Well what do you remember about Mr. Wallace's statement about what he had said to Tom Carter?
>
>   A.   He told me that he had had a conversation with Tom about why do you need all this grief, you – you know, you're eligible to retire, you've got the money that you need, and you can just go do whatever you wanted to do from now on. And as I recall at that point Tom had told him that he needed to know right away because he was going to a gunsmith school I believe in Colorado and that he was going to start in the August timeframe and he needed to know so that he could make plans accordingly.

Mr. Carter's testified at the EEOC hearing.[21]

>   Q.   Johnnie Wallace was the selecting official. Did you have any discussion with Mr. Wallace at that time or at any other time that in any way related to your age?
>
>   A.   Yes sir. On one or two occasions, and I'm – it seemed insignificant at the time, I had – something was said about retirement and Mr. Wallace either told me that I either needed to retire, I was too old or I had enough money to go do something else and I should get away from the problems and so forth of the office. I think a statement like that was made twice.

At his deposition, Mr. Carter testified:[22]

>   Q.   Why do you think Johnnie Wallace cared about how old you were?
>
>   A.   I'm eligible to retire and we discussed retirement occasionally. He made the statement to me that I was too old and for that kind of stuff. I have been around too long and needed to retire.
>
>   Q.   Okay. I want to stop you right there. Do you remember the exact words?\
>
>   A.   No ma'am.
>
>   Q.   So this is in general?
>
>   A.   It's paraphrased.
>
>   Q.   Paraphrased. It's paraphrased. Okay. So can you tell it to me again. please?

---

[21] Defendant's Motion for Summary Judgment, Exh. A, pp. 26–27.

[22] Defendant's Motion for Summary Judgment, Exh. K, pp. 5–6.

    A.    He said to me that I was too old for that kind of stuff – actually this kind of stuff is what I think he said. You are too old for this kind of stuff. You have been around too long or a long time, and you need to retire.

Mr. Carter further testified at his deposition:[23]

    Q.    Okay. You had talked to Johnnie Wallace about applying for this position?

    A.    He knew that I had applied for it.

    Q.    But did you talk to him about it?

    A.    I'm going to say no in the context of your question. I told Johnnie if I was selected for the position, I would stay in it at least two years.

In his testimony at the EEOC hearing, Mr. Wallace testified that although he had several conversations with Mr. Carter concerning retirement plans in general he denied ever saying Mr. Carter was too old and that, although he may have made the statement attributed to him by Mr. Martelli, or the conversation to which it referred, he had no recollection of making it or having the conversation with Mr. Carter.[24]

The factual situation in this case is much closer to those cases in which the Ninth Circuit has held that, the weakness of the evidence notwithstanding, granting summary judgment was inappropriate. *See. e.g., E.E.O.C. v. Pape Lift, Inc.*, 115 F.3d 676, 684 (9th Cir.1997); *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1411 (9th Cir.1996). Indeed, the very case improperly cited by the Secretary, *Phillips v. Boeing Co.*, 2006 WL 455547 (9th Cir. February 24, 2006),[25] supports the position of Plaintiff. If it were binding on this Court, because the remarks referred to in *Phillips* are nearly identical to those in this case, *Phillips* would compel denial of the Secretary's motion. This Court does agree with the *Phillips* panel that, as in that case, the remarks in this case could have been either innocuous or invidious depending on all the factors surrounding their utterance and the question should be resolved by a fact finder's searching inquiry on a full record.

---

[23] *Id.*, p. 7.

[24] Defendant's Motion for Summary Judgment, Exh. H, pp. 55–56.

[25] Citation to an unpublished memorandum decision violates NINTH CIRCUIT R. 36-3 and D.AK LR 7.1(c)(1).

VI.  CONCLUSION/ORDER

Based on the foregoing, Defendant's Motion for Summary Judgment at **docket 13** is **GRANTED in part** and DENIED in part.

IT IS ORDERED THAT the Amended Complaint to the extent that it alleges a violation of 42 U.S.C. § 2000e-16 is DISMISSED, with prejudice.

IT IS FURTHER ORDERED THAT discovery having closed, the time for filing any further dispositive motions having lapsed, and it appearing this case is ready for trial, on before **July 5, 2006**:

(1)  Counsel for plaintiff must consult with other counsel and jointly

    (a) certify the case is ready for trial, and

    (b) suggest at least two alternate trial dates, at least one of which must be approximately six months from the date of this order; or

(2) if the parties are unable to so certify, counsel for the Plaintiff must report to the court what matters remain to be resolved and when they will be attended to or, if necessary, request a status conference with the court.

(3)  The court will arrange a settlement conference with another judge upon request, and use of this procedure will be required unless counsel certify that the case cannot be settled.

Dated: June 3, 2006.

                                                            s/ James K. Singleton, Jr.
                                                            JAMES K. SINGLETON, JR.
                                                            United States District Judge